# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2025-CA-00286-SCT

*GLORIA THOMPSON AND DEBORAH DIXON*

*v.*

*THE ESTATE OF HERBERT LEE, JR.,
DECEASED, AND SHARON GALLAGHER-LEE,
IN HER CAPACITY AS THE ADMINISTRATRIX
OF THE ESTATE OF HERBERT LEE, JR.,
DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/25/2025 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| TRIAL COURT ATTORNEYS: | BRENTON M. CARTER |
| | DAVID RINGER |
| | LANCE L. STEVENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | LANCE L. STEVENS |
| ATTORNEY FOR APPELLEES: | BRENTON M. CARTER |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 11/13/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     On December 29, 2021, Sharon Gallagher-Lee (Sharon) filed a petition to open an estate for her deceased husband, Herbert Lee Jr.  During Lee's life, this Court found that Lee had misappropriated client funds during his representation of his clients Gloria Thompson and Deborah Dixon in a diet-drug-litigation ("fen-phen") case.  Nationwide litigation over the diet drug led to the creation of a multidistrict discovery account that allowed attorneys to pay a fee and in return receive access to certain discovery materials.  Lee paid into the

multidistrict-litigation account and settled thirteen different cases, resulting in a gross settlement of $32 million. Thompson and Dixon filed suit against Lee, and the trial court determined that Lee had incorrectly paid into the multidistrict-litigation account. Further, a refund of the amount paid into the multidistrict-litigation account was returned to Lee, and the trial court determined that Lee had also incorrectly distributed the refund money. This Court affirmed a judgment against Lee in favor of Thompson and Dixon in the amounts of $420,000 and $180,000, respectively. This judgment expired in July 2021, without renewal and without Thompson and Dixon ever receiving full compensation for their damages.

¶2. Due to the litigation between Thompson, Dixon and Lee, the refund money remained in the multidistrict-litigation fund escrow account until August 1, 2024, when the multidistrict-litigation fund trustee interpled the funds into the Hinds County Chancery Court registry. This case revolves around who is entitled to receive this money. The chancellor found that based on language in the expired judgment, the entire refund should be distributed to Lee's Estate. We find that the chancellor erred and that the money should be returned to the parties consistent with the manner that it was initially paid into the escrow account. Based on findings of fact from the prior cases and admissions of the parties in this appeal, 45 percent of the money was paid by Lee, and 55 percent of the money came from Thompson and Dixon. The chancellor's order is reversed, and the case is remanded for distribution of the refund consistent with this opinion.

2

**FACTS AND PROCEDURAL HISTORY**

    *I.      Prior Litigation[1]*

¶3.    In 2001, Herbert Lee Jr. represented Gloria Thompson, Debra Dixon and eleven other clients in a diet-drug-litigation ("fen-phen") case against a diet-drug manufacturer in the Circuit Court of Holmes County. Lee settled the case on behalf of his thirteen clients for $32 million. Six percent of this gross settlement was "used to pay for 'common benefit' discovery materials generated in the federal multi-district litigation (MDL) of diet-drug claims[,]" the MDL fee. *Lee v. Thompson (Lee II)*, 167 So. 3d 170, 172 (Miss. 2014). Lee paid 45 percent of the MDL fee, and his clients paid 55 percent of the MDL fee off the top of their settlement amounts. *Id.* at 173. The MDL fee was deposited into a Multi-District Litigation Fee and Cost Account (MDL fund) that was managed by the multidistrict trustee's office. *Lee v. Thompson (Lee I)*, 43 So. 3d 1104, 1107 (Miss. 2010). "More than a year after the settlement of the plaintiffs' case against [the diet-drug manufacturer], the trustee of the MDL . . . fund made a determination that one-third of all the sums deposited into the" MDL fund would be refunded. *Id.* "Consequently, two percent of Lee's diet-drug clients' $32 million settlement was returned to Lee." *Id.* at 1107-08. "Lee allocated the refund by retaining forty-five percent for himself as his attorney's fee and refunding each client one thirteenth of the remaining fifty-five percent." *Lee II*, 167 So. 3d at 173.

¶4.    Thompson, who received a $7.4 million settlement, and Dixon, who received a $3.1

---

[1]We rely on the published opinions of this Court in *Lee I* and *Lee II* for the majority of these facts. The parties have stipulated to the facts as they are stated in this Court's opinions. Further, this Court takes judicial notice of the 2014 appellate court record.

million settlement, filed suit against Lee alleging that his attorney's fees exceeded the amount agreed upon in their retainer agreements and that he had improperly distributed the refund.[2] Thompson and Lee refused to accept the MDL refund as calculated by Lee, so a portion of the MDL refund remained with the MDL trustee. *Lee I*, 43 So. 3d at 1108.

¶5.     This Court, in *Lee I*, found that pretrial multidistrict-litigation orders (MDL pretrial orders) dictated that the MDL fee should have been "deducted entirely from the attorney's fees, not the client's recovery." *Id.* at 1111. Further, because the MDL fee should have been deducted from the attorney's fees based on each clients' settlement amounts, Lee had improperly distributed the refund per capita, as one thirteenth of the refund to each client, instead of pro rata, as a percentage of the total settlement. *Id.* at 1108. We remanded the case for the trial court to determine if the settlement was distributed in accordance with the pretrial MDL orders and to order the appropriate distribution. *Id.* at 1116.

¶6.     On remand, "[t]he trial court determined that the MDL fee had not been paid in accordance with the MDL pretrial orders." *Lee II*, 167 So. 3d at 175. The trial court entered an order on May 1, 2012, that calculated the amounts due Thompson and Dixon and determined that Lee owed Thompson $420,000 and Dixon $180,000. *Id.* This amount was calculated as "the difference between the attorney's fees paid by Plaintiffs and the amount that should have been paid" under the MDL pretrial orders. *Id.* (internal quotation mark omitted). The trial court stated in its May 1, 2012, order that Lee's payment scheme of the

---

[2]Eventually, a jury decided the percentage of attorney's fees agreed to by the parties under the retainer agreements. *Lee II*, 167 So. 3d at 175. This issue is not relevant to the appeal.

4

MDL refund ensured that "he received 45% of all monies received by the clients. He not only deducted 45% attorney's fees from the settlement disbursal without crediting his clients for the MDL [fee], but Lee also took 45% of the refund prior to disbursing the remainder, per capita between all plaintiffs." After finding that Lee had wrongfully disbursed the MDL refund, the trial judge ordered "the remaining MDL refund amounts in trust for Gloria Thompson and Deborah Dixon be disbursed to Defendant Herbert Lee, Jr. after payment of the above damages."

¶7.    Thompson and Dixon filed a motion challenging the judge's order awarding Lee the entire MDL refund. They requested that the court modify the order to allow the MDL refund to be distributed to them and used as a credit toward the payment of the judgment Lee owed them. The trial court denied their motion and stated in an order on July 3, 2012, that "the recalculation of the MDL fees in favor of the Plaintiffs necessarily 'entitles [Lee] to the entirety of any refunds'. . . . Further, the final paragraph of the Court's May 1 *Opinion and Order* orders that Defendant is to receive these funds from the MDL Refund only '*after payment of the above damages*.'"

¶8.    On August 1, 2012, the trial court entered a final judgment, and Lee appealed. *Lee II*, 167 So. 3d at 175. This Court recounted the factual findings of the trial court, found Lee's arguments to be barred or without merit and affirmed the trial court's final judgment. *Id.* at 180. This Court's opinion stated that "[t]he trial court found that, because under the appropriate calculation Lee was responsible for the entire MDL fee, he was entitled to the refund." *Id.* Lee's motion for rehearing was denied, and the Court's mandate issued on July

5

3, 2014.

¶9.     In 2015, Lee filed suit under 42 U.S.C. § 1983 against Thompson, Dixon and six Mississippi Supreme Court Justices in the United States District Court for the Southern District of Mississippi for their affirmance of the trial court's orders. *Lee v. Weill*, No. 3:14cv652-DPJ-FKB, 2015 WL 224816, at *1-2 (S.D. Miss. Jan. 15, 2015). His claims were dismissed. *Id.* at *6. In July 2017, Lee was publicly reprimanded and fined by the Mississippi Bar for failure to properly account for the MDL funds during the diet-drug litigation.

## II.     *Current Litigation*

¶10.    On August 22, 2019, Lee died. Lee's wife, Sharon, filed a petition to open his estate on December 29, 2021, in the Hinds County Chancery Court, and letters of administration were issued on March 29, 2022. On August 1, 2023, Sharon filed a Petition to Bar Purported Claims against Thompson and Dixon, alleging that under Mississippi Code Section 15-1-43 (Rev. 2019), the seven-year statute of limitations on the two money judgments had expired and requesting the court to deny any claims against the estate by Thompson and Dixon. Thompson and Dixon filed a response to Sharon and a motion to order the MDL escrow agent to release the MDL refund to them instead of the estate. The parties filed numerous responses and documents. Additionally, two separate hearings were conducted. In August 2024, a sum of $98,461.54 was interpled into the Hinds County court registry by the MDL escrow agent for distribution in accordance with the final orders of the court.

¶11.    On February 25, 2025, the chancellor entered an order denying Thompson and

6

Dixon's request to release the funds and granting the petition to bar any and all claims of Thompson and Dixon against the estate. The chancellor found that the August 2, 2012, final judgment "represents the conversion of a plaintiff's claim into a judgment upon which execution could be done." The chancellor found that "the Circuit Court and the Supreme Court concluded that Lee was entitled to the money being held by the MDL escrow agent . . . [and] the rights of Thompson and Dixon were vindicated with the entry of the August 2, 2012 Final Judgment in their favor." Accordingly, the chancellor concluded that the MDL refund should be released to Lee's estate.

¶12. The chancellor further found that the statute of limitations on the August 2, 2012, final judgment had expired on July 7, 2021, and that Thompson and Dixon had failed to timely renew. The chancellor found that Thompson and Dixon's rights to execute on the final judgment had expired, thus any claims against the estate were barred. Further, any argument that Thompson and Dixon had not received proper notice of the opening of the estate was without merit as their judgment expired on July 7, 2021, and Sharon had petitioned to open the estate on December 29, 2021. The chancellor certified the judgment as a Mississippi Rule of Civil Procedure 54(b) final judgment, and Thompson and Dixon timely appealed on March 1, 2025.

## ISSUES PRESENTED

¶13. Thompson and Dixon challenge the chancellor's denial of their claims and their right to the MDL refund. They frame their issues as:

> 1. Whether the trial judge erred by dismissing the claims of Thompson and Dixon against the estate of former lawyer Herbert Lee, Jr., where

7

this Court has twice ruled that the MDL funds at issue belong to Thompson and Dixon[.]

2.  Whether the trial judge erred in ruling that Thompson and Dixon were required to maintain a judgment against Lee or his estate to recover funds that belong to them, and not Lee.

(Citations omitted.)  These arguments are interconnected and will be addressed together.

## STANDARD OF REVIEW

¶14.  "This Court 'will not disturb the factual findings of a chancellor when supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.'" *Ruff v. Est. of Ruff*, 989 So. 2d 366, 369 (Miss. 2008) (alteration in original) (quoting *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 13-14 (Miss. 2007)).

## ANALYSIS

¶15.  Pursuant to Section 15-1-43, the judgment awarding Thompson and Dixon damages is expired.  Section 15-1-43 provides in part:

All actions founded on any judgment or decree rendered by any court of record in this state, shall be brought within seven (7) years next after the rendition of such judgment or decree, or last renewal of judgment or decree, whichever is later.

Thompson and Dixon admit that they failed to renew the judgment within the seven-year period prescribed by Section 15-1-43 but maintain that they were not required to renew the judgment to claim money that this Court has found to be held in trust for them.

¶16.  The chancellor correctly found that Thompson and Dixon's failure to renew the judgment in July 2021, seven years after the mandate of this Court, extinguished the rights

8

and remedies afforded them under the judgment. Miss. Code Ann. § 15-1-3 (Rev. 2019). The chancellor, however, erred by ordering the entire refund to be distributed to the estate according to the language of the expired judgment.

¶17.    First, the May 1, 2012, order detailing the calculations of the damages and ordering distribution of the refund was not admitted into the record in this case.  This Court has pulled it from the Court's records in *Lee II*.  The May 1, 2012, order clearly states that the refund will be disbursed to Lee *after* payment of the damages he owed to Thompson and Dixon.  It is undisputed that Lee has not paid damages to Thompson and Dixon, so distributing the refund to the estate violates the language of the trial court's order.

¶18.    The chancellor relied on this Court's quotation of the order to reach the determination that the refund belongs to the estate.  This Court's quotation of the order in the *Lee II* stated that "[t]he trial court found that, because under the appropriate calculation Lee was responsible for the entire MDL fee, he was entitled to the refund." *Lee II*, 167 So. 3d at 175.  The estate relies almost entirely on this quotation to support its claim to the full MDL refund.  The quotation, while correct, only partially encompasses the full language of the order.  Like the old school yard game of Telephone,[3] this Court's summary of the trial court's order has resulted in a slightly skewed understanding of what was intended for the MDL refund.  The

---

[3]Given the undisputed fact that Lee improperly included the clients' money in the MDL fee, this holding is puzzling.  Nevertheless, it is the law of the case and must be followed.  In Telephone, a phrase is whispered down a line of people, and the last person announces what they heard to the room.  By the end of the game, the phrase usually is different than the initial phrase chosen by the first player.  *See* Girl Scouts of Western Washington, *Telephone*, https://www.girlscoutsww.org/content/dam/girlscoutsww-redesign/documents/members/volunteers/telephone-game.pdf (last visited Nov. 10, 2025).

9

distribution of the full refund to the estate after Lee's misappropriation of his clients' fees and failure to pay damages was not the intent of the trial judge, as evidenced by the language in his order that the refund would be given only *after* payment of the damages.

¶19. Second, when then judgment expired, the estate's claim to the full refund also expired. Section 15-1-3 provides, in part, that "[t]he completion of the period of limitation prescribed to bar any action, shall defeat and extinguish the rights as well as the remedy." Any argument by the estate to enforce the language in an expired judgment to its own benefit is irrelevant. The judgment is expired, and any remedy under the judgment is not enforceable. The chancellor manifestly erred by ordering the refund to be disbursed to the estate based on a partial quotation of the expired judgment.

¶20. While the relief provided under the expired judgment is not enforceable, the facts and conclusions established within the court's orders and this Court's opinion are still true. Further, those facts have been stipulated by the parties. It is undisputed that Lee paid 45 percent of the MDL fee and that Thompson and Dixon paid 55 percent of the fee. The money held in the MDL escrow account was always 55 percent Thompson and Dixon's money. Even the May 1, 2012, order directing the refund to be disbursed to Lee after payment of the damages noted that the refund was being held "in trust for Gloria Thompson and Deborah Dixon[.]" Thompson and Dixon, in their brief, state that "even if no Supreme Court decisions had ever been published Lee's claim to those funds would have only been to the 45% representing his fee[.]" The MDL refund money that now sits in the Hinds County Chancery Court registry should be returned according to the percentages that Lee, Thompson

and Dixon paid—45 percent to the estate and 55 percent to Thompson and Dixon.

¶21. This Court recognizes that the money was found to have been incorrectly paid by Lee under this payment scheme. But payment of the full refund to the estate based on an expired judgment fails to recognize that the judgment is expired and fails to adhere to the language within the trial court's expired orders. Alternatively, releasing the full MDL refund to Thompson and Dixon would be awarding an equitable remedy to them based on a judgment that they allowed to expire. The MDL refund should be returned to the parties consistent with the manner that it was paid into the trust account.

## CONCLUSION

¶22. The chancellor erred by enforcing an expired judgment and ordering the entire MDL refund to be disbursed to the estate. Because the money has been held in trust, the money should be returned to the parties in the same manner that it was initially paid into the trust account. Forty-five percent of the refund should go to the estate, and 55 percent of the refund should go to Thompson and Dixon. The chancellor's order is reversed, and the case is remanded for distribution of the refund in conformity with this opinion.

¶23. **REVERSED AND REMANDED.**

**KING AND COLEMAN, P.JJ., MAXWELL, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR. RANDOLPH, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

11